Las Monjas Racing Corporation, demandante y apelada, *v.* Comisión Hípica Insular de Puerto Rico, Etc., demandada y apelante.

Núm. 7937.—*Sometido:* Mayo 2, 1940. *Resuelto:* Junio 14, 1940.

*Diego O. Marrero,* abogado de la apelante; *Leopoldo Felíu,* abogado de la apelada.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

En diciembre 12, 1938, la Comisión Hípica Insular requirió a Las Monjas Racing Corporation para que prestase una fianza en efectivo por la suma de $200, para cubrir los gastos en que la Comisión se viese obligada a incurrir, en relación con la vigilancia y dirección de las carreras que se celebrasen en el hipódromo Las Monjas; y al mismo tiempo le notificó, que si dejaba de consignar dicha fianza, la Comisión Hípica Insular dejaría de designar los empleados o funcionarios que de acuerdo con la ley y el reglamento de la Comisión deben estar presentes y actuar en los hipódromos en los días en que se celebran carreras y juegos.

No estando conforme con la exigencia de la Comisión y teniendo anunciadas unas carreras para el día 25 de diciembre de 1938, Las Monjas Racing Corporation acudió ante la Corte de Distrito de San Juan en solicitud de un auto de *injunction* por el cual se prohibiese a la Comisión demandada exigir de la demandante la prestación de fianza alguna, prohibiéndole igualmente que dejase de proveer, designar y nombrar los empleados que de acuerdo con la ley y el reglamento está obligada a nombrar para el hipódromo de la demandante.

Librada una orden para mostrar causa, compareció la Comisión demandada y formuló excepción previa en contra de la petición, alegando: (*a*) que dos acciones han sido indebidamente acumuladas; (*b*) que la demanda es ambigua y dudosa; y (*c*) que no procede en este caso el auto de *injunction* porque lo que pretende la peticionaria es que la Comisión deje de cumplir con disposiciones legales de estatutos públicos establecidos para beneficio del público.

En 21 de diciembre de 1938 la corte de distrito dictó auto de *injunction* preliminar. La Comisión interpuso el presente recurso y para sostenerlo alega: que la corte inferior erró al desestimar las excepciones previas; al conceder el *injunction* preliminar sin tener ante sí evidencia alguna que sostuviera la petición; y al conceder el *injunction* en los términos en que fué concedido.

■■ La primera excepción formulada en contra de la petición se refería a la alegada indebida acumulación de dos acciones. Alega la apelante que la petición tenía dos propósitos: (1) impedir que la demandada exigiera la fianza; y (2) obligar a la Comisión a que nombrase funcionarios y empleados para las carreras que se proponía celebrar la peticionaria. Y arguye que si bien es cierto que el primer propósito puede lograrse mediante un auto de *injunction,* no así el segundo, pues ello equivaldría a ordenar el cumplimiento de deberes ministeriales por medio de *injunction,* en vez de recurrir al *mandamus,* que es el remedio legal adecuado para tal fin.

Opinamos que la corte inferior no erró al desestimar dicha excepción. No existe la alegada acumulación de acciones. Una sola es la acción que se ejercita. De acuerdo con los hechos alegados en la petición y admitidos por la excepción previa, la Comisión exigió una fianza y amenazó con dejar de nombrar los empleados, si no se cumplía con su exigencia. Para invalidar la exigencia e impedir la realización de la amenaza se solicitó el *injunction.* Si la peticionaria se hubiese limitado a pedir y la corte a decretar que la Comisión debía abstenerse de exigir la fianza, quedando la Comisión en libertad de realizar su amenaza de no nombrar los funcionarios y empleados necesarios para que la peticionaria pudiera celebrar sus carreras, el auto de *injunction* hubiera resultado académico y la peticionaria se hubiese encontrado frente al dilema de tener que prestar la fianza, no obstante el *injunction,* o dejar de celebrar las carreras por falta de aquellos empleados que la ley requiere y que la Comisión, según se alega, está obligada a nombrar.

La corte de distrito tenía jurisdicción sobre las partes litigantes y facultad y jurisdicción para prohibir a la Comisión demandada que exigiese a la corporación peticionaria la prestación de una fianza que la Comisión no tenía derecho a exigir. En esas condiciones, y tratándose de un procedimiento de equidad como lo es el de *injunction,* era deber

de la corte ejercitar su facultad y retener su jurisdicción para hacer completa justicia e impedir que sus decretos fuesen burlados o ignorados mediante actos u omisiones realizados o incurridos con el único objeto de evadir el cumplimiento de tales decretos.

Los siguientes párrafos de Corpus Juris son aplicables a la situación que nos presenta este caso:

"Es una regla bien sentada la de que una corte de equidad que ha adquirido jurisdicción sobre una controversia por cualquier fundamento, o para cualquier propósito, retendrá tal jurisdicción con el propósito de administrar un remedio completo y hacer entera justicia con respecto a la cuestión litigiosa, especialmente con respecto al cumplimiento de su propio decreto.... Antes de que la regla pueda ser aplicada, alguna base de jurisdicción de equidad debe ser alegada y establecida, y la cuestión que ha de ser adjudicada debe ser incidental a la primera, o tan íntimamente ligada a ella que su determinación sea necesaria para la decisión final de toda la controversia entre las partes.

"Las disposiciones de los códigos y leyes de procedimiento con referencia a la acumulación de causas de acción y reconvenciones no han cambiado la regla aplicable a la retención de jurisdicción en acciones de equidad." 21 C. J., sec. 117, página 134.

"Por virtud de esta regla, una corte de equidad, cuando su jurisdicción ha sido invocada para algún propósito de equidad, procederá a determinar cualesquiera otras equidades existentes entre las partes, relacionadas con el objeto principal del pleito, y concederá todos los remedios necesarios para un completo ajuste de la controversia, siempre que así lo permitan las alegaciones (*pleadings*)." 21 C. J., sec. 118, pág. 137.

"Es una regla general la de que cuando la controversia requiere un remedio puramente de equidad, de tal naturaleza que justifique la intervención de una corte de equidad, la corte procederá a la determinación final de todas las cuestiones en controversia, y al hacerlo así, puede establecer derechos puramente legales y conceder remedios legales, que de otro modo estarían fuera de sus facultades, tales como dictar decretos personales para el pago de dinero o daños y perjuicios por incumplimiento de contrato. Esta doctrina prevalece no solamente en aquellos estados que han adoptado códigos, si que también en aquellos en que las cortes de ley y las de equidad existen separadamente.

"

"La corte, habiendo tomado jurisdicción legal de una causa, está facultada y es su deber conceder un remedio completo, aun cuando ello envuelva incidentalmente la concesión de un remedio ordinariamente concedido por la corte a virtud de un procedimiento especial." 21 C. J., sec. 119, pág. 138.

La excepción basada en la alegada ambigüedad de la petición carece de fundamento. Las alegaciones de la petición son claras y no ofrecen duda alguna.

▉ El segundo señalamiento de error se basa en que la corte inferior dictó el auto de *injunction* preliminar sin practicar prueba alguna y sin dar una oportunidad a la demandada de contestar la demanda.

No tiene motivos de queja la parte apelante. Al argumentar este alegado error se olvida de que lo que dictó la corte inferior fué un auto de *injunction pendente lite* y no una sentencia de *injunction* perpetuo. La demandada fué notificada y requerida para mostrar causa por las cuales no debía librarse el auto solicitado. Compareció en la fecha señalada y optó por formular excepciones previas a la petición, admitiendo así los hechos en ella alegados. Para la concesión del *injunction* preliminar la corte no estaba obligada a practicar prueba, toda vez que los hechos alegados en la petición y no controvertidos por la parte demandada establecían un caso prima facie en favor de la peticionaria. Véanse: *Municipio de Gurabo* v. *Juncos Central*, 18 D.P.R. 408, 413; Secciones 5, 6, 8 y 10 de la Ley definiendo los *injunctions,* etc., aprobada en marzo 8, 1906.

▉▉ La cuestión envuelta en el tercer señalamiento es la siguiente: ¿Está legalmente facultada la Comisión Hípica Insular para exigir la prestación de la fianza por ella exigida a la corporación demandante?

El artículo 5 de la Ley Hípica de Puerto Rico (Ley núm. 11 de 1932) enmendado por la Ley núm. 17 de julio 15 de 1935 ((2) pág. 93), faculta a la Comisión Hípica Insular para reglamentar todo lo concerniente al deporte hípico, prescri-

bir reglas para la celebración de las carreras y reglamentar todo aquello que se relacione con la forma en que deberán hacerse las apuestas.

De acuerdo con el artículo 29 de dicha Ley Hípica los fondos de la Comisión se formarán con el 15 por ciento del total que se derive por concepto del descuento en las bancas y *subscription funds,* y del 19 por ciento del total que se derive por concepto de descuento del montante del *pool* y de las *mutuels.*

El artículo 31 de la misma ley provee que la Comisión podrá disponer de no más del 70 por ciento de sus mencionados ingresos para pago de dietas de los comisionados y de sus funcionarios y sus gastos corrientes, para aumentar los premios de las carreras, etc. El 30 por ciento restante se dedicará a los comedores escolares e instituciones benéficas.

El artículo 23½ dispone que la Comisión deberá exigir fianzas a las personas responsables del manejo de fondos en los hipódromos en explotación, para garantizar el dinero que se juegue en los diversos sistemas de apuestas.

Arguye la Comisión apelante que de acuerdo con el artículo 5 de la Ley Hípica ella está facultada para aprobar y poner en vigor el artículo 39 de su reglamento, a virtud del cual se exigió la prestación de la fianza en cuestión, que lee así:

"La Comisión Hípica Insular se reserva el derecho de exigir de la persona tenedora de una licencia para explotar un hipódromo en Puerto Rico, la prestación de una fianza por una suma suficiente a cubrir los gastos en que se vea obligada a incurrir la Comisión Hípica Insular en la vigilancia y dirección de las carreras que se celebren en su hipódromo y de las jugadas de *pool* y bancas que en relación con las mismas se realicen, cuando se celebren carreras en dos o más hipódromos en un mismo día."

La primera cuestión que debemos considerar y resolver es si la Comisión Hípica está facultada para imponer al dueño de un hipódromo la obligación de pagar los gastos en

que se vea obligada a incurrir la Comisión, en relación con la inspección de las carreras y las bancas en los días en que se celebren carreras en dos o más hipódromos. Si esa obligación no es imponible, el artículo 39 del Reglamento de la Comisión, supra, debe ser declarado nulo y *ultra vires,* pues sería ilógico sostener que pueda exigirse el afianzamiento de una obligación inexistente.

La Ley Hípica (artículo 29) dispone específicamente cuáles son las fuentes de ingreso con que ha de contar la Comisión Hípica para la formación de su fondo. En el ejercicio de sus facultades fiscales la Asamblea Legislativa ha impuesto a los explotadores de hipódromos, bancas, *subscription funds, pools* y cualquiera otro sistema de apuestas la obligación de pagar a la Comisión un 15 por ciento o 19 por ciento, según el caso, de las sumas derivadas como descuentos sobre las sumas apostadas en las carreras. Esas sumas ingresan en los fondos de la Comisión, para pagar con ellos las dietas, gastos corrientes, premios, etc.

Las facultades administrativas que para reglamentar el deporte hípico, las carreras y las apuestas concede a la Comisión Hípica la sección 5 de la Ley Hípica no incluye a nuestro juicio la facultad fiscal de imponer al dueño de un hipódromo una contribución adicional, obligándole a pagar los gastos en que pueda incurrir la Comisión cuando se celebren carreras el mismo día en dos o más hipódromos. En ausencia de una delegación legislativa expresa que autorice tal imposición, nos sentimos obligados a resolver que el artículo 39 del Reglamento de la Comisión, supra, es *ultra vires* y como tal nulo. Y no teniendo la Comisión facultad para exigir el pago de esa contribución adicional, tampoco la tiene para exigir la prestación de fianza.

*Debe confirmarse la resolución recurrida.*

El Juez Asociado' Sr. De Jesús no intervino.