EDELMIRO MARTÍNEZ RIVERA, querellante y apelado, *v.* PUERTO RICO COCONUT INDUSTRIES, INC., querellada y apelante.

Núm. 9549.—*Sometido:* Enero 20, 1948.   *Resuelto:* Febrero 24, 1948.

*Córdova & González,* y *Hernán R. Franco,* abogados de la apelante; *Luis Blanco Lugo,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Se trata de una apelación interpuesta por la corporación demandada contra una orden de *injunction* preliminar dictada por el Tribunal de Distrito de San Juan. Los hechos que han motivado este recurso son como sigue:

El demandante es dueño de una finca rústica de 29 cuerdas, dentro de la cual y en un punto cercano a su línea de colindancia Oeste nace una quebrada que corre a través de la finca hasta y pasando más allá de su colindancia Este. El agua de esa quebrada se utiliza para el consumo humano, para abrevar el ganado que pasta en la finca y para otros menesteres agrícolas. Con posterioridad a la adquisición de la finca por el demandante, la corporación demandada estableció a corta distancia de la misma una fábrica para la elaboración y enlatado de frutas.

En la demanda sobre injunction y daños y perjuicios radicada por el demandante se alega que durante los tres meses anteriores la demandada ha hecho lanzar y permitido que se lancen y viertan a una zanja que corre hacia la finca del demandante "todas las aguas sucias, residuos de calderas, aceite combustible quemado y demás desperdicios y materia prima y substancias descompuestas, las que a través de dicha cuneta entran a la quebrada de la finca del demandante y corren por todo su cauce"; que como resultado de los actos de la demandada las aguas de la quebrada se mantienen sucias, malolientes y contaminadas en tal forma que no pueden ser utilizadas para el consumo humano ni por el ganado del demandante; que cuando el ganado por exceso de sed toma el agua así contaminada sufre trastornos físicos que degeneran en enfermedad y muerte del mismo. Se alega que la demandada, no obstante haber sido requerida para que desistiera de continuar contaminando las aguas, se ha negado a ello y continúa perturbando al demandante en el libre uso de su propiedad.

Contestó la demandada negando los hechos esenciales de la demanda y alegando como defensa especial "que las aguas de desecho de su fábrica corren por canales de desagüe a una quebrada fuera de la finca del demandante cercana a la colindancia de su fábrica que está a más bajo nivel y alega que la contaminación de dichas aguas de desecho es insuficiente para causar le muerte del ganado del demandante."

El único error imputado a la corte inferior es el de haber abusado de su discreción "porque existe una carencia total y absoluta de evidencia para sostener las alegaciones de la demanda de injunction."

En el acto de la vista de la moción sobre injunction preliminar el demandante ofreció como prueba su propia declaración, la del químico Sr. Gil Figueroa, una carta del Administrador de la demandada y un informe sobre el análisis químico de las aguas. La demandada no presentó prueba, limitándose a solicitar la denegación del injunction preliminar por falta de pruebas.

La corte inferior, después de oír la prueba ofrecida por el demandante, declaró probados los hechos siguientes:

"El demandante es dueño y está en posesión de la finca descrita en el párrafo primero de la Demanda (admitido en la Contestación). Por esta finca discurre una quebrada que se nutre de cuatro afluentes. Como en esta finca no hay acueducto, las vacas lecheras del demandante tienen que beber el agua de la quebrada. A tal fin se ha preparado un abrevadero que recoge el agua de esta quebrada.

"Varios meses antes de la radicación de la demanda, la Puerto Rico Coconut Industries, Inc., estableció una fábrica de elaboración del coco y la cidra, cerca de, y en terrenos colindantes con la finca del demandante. En esa fábrica la demandada tiene un tubo por donde se lanzan los desperdicios de las frutas elaboradas. Ese tubo desemboca en terrenos de la demandante pero a muy poca distancia de la colindancia. Los desperdicios, en forma de líquido y de sólidos (agua, leche de coco, fibras), caen en una de las corrientes de agua que va a formar la quebrada. Dos de los cuatro mencionados afluentes resistieron favorablemente el análisis químico. Los dos

que no se examinaron son formados por manantiales y no tenemos motivos para creer que sus aguas sean nocivas.

"Por otro lado, el análisis de los desperdicios de la fábrica demostró que éstos contaminan el agua en tal forma que huelen a rancio, a abombado. El análisis indica, además, que el agua obtiene grasa, que su acidez aumenta y que el oxígeno disuelto desaparece.

"Esta condición del agua armoniza con la observación del demandante que el ganado que usa el agua del abrevadero, así contaminada, se enferma, padece de diarrea, enflaquece y pierde agilidad. El ganado que se enferma al beber esa agua, cuando lo trasladan y dejan de beberla, se cura.

"Lo anterior nos lleva a la conclusión que los desperdicios de la fábrica del demandado, al caer en la quebrada que cruza la finca del demandante, contaminan de tal modo el agua de la misma que la descomponen, convirtiéndola en maloliente y nociva, y que le enferman el ganado del demandante y le han ocasionado la muerte de diez cabezas de ganado."

Hemos examinado detenidamente la transcripción de la evidencia y encontramos que las conclusiones de hecho y de derecho de la corte inferior están sostenidas por la prueba.

Los hechos alegados y probados son a nuestro juicio suficientes para justificar la expedición del injunction *pendente lite.*

De acuerdo con el artículo 5 de la Ley de Aguas, Compilación 1911, pág. 487, "tanto en los predios de los particulares como en los de propiedad del Estado, . . . las aguas que en ellos nacen continua o discontinuamente pertenecen al dueño respectivo para su uso o aprovechamiento mientras discurren por los mismos predios." El mismo artículo dispone que si después de haber salido del predio donde nacen, las aguas entran a discurrir naturalmente por otro de propiedad privada, el dueño de dicho predio puede aprovecharlas eventualmente y luego el inmediato inferior si lo hubiere, y así sucesivamente.

La sección 9 de la Ley núm. 444 de mayo 14 de 1947, pág. 931, 939, dispone:

"*Sección* 9.—Será ilegal el que cualquier persona arroje o permita que se arrojen en cualquiera de los lagos, ríos, corrientes, aguas circundantes o cualquiera otras aguas de la Isla, cualquier desperdicio o contaminación de cualquier clase que tienda a destruir la vida de los peces, o que sea perjudicial a la salud pública. Cualquier persona que arroje o permita que se arroje desperdicio o contaminación alguna en cualquiera de las aguas de la Isla, que tienda a destruir la vida de los peces o sea perjudicial a la salud pública, será considerada como que está violando las disposiciones de esta Ley.''

La sección 12 de la misma Ley dispone expresamente que ''nada de lo contenido en esta Ley será interpretado en el sentido de revocar o en forma alguna limitar las disposiciones contenidas y derechos conferidos por el Código Civil vigente de Puerto Rico; la ley de agua o legislación aprobada con relación al uso y aprovechamiento de las aguas.''. La sección 2 de la citada Ley declara que ''constituye un estorbo o daño público (*nuisance*) todo aquello que sea perjudicial a la conservación y uso de esos cuerpos de agua interiores o circundantes en Puerto Rico.''

De acuerdo con las disposiciones legales que hemos citado, el demandante, como dueño de un predio de terreno en el cual nacen o a través del cual discurren naturalmente aguas propias para el consumo humano y para abrevar el ganado, tiene derecho a usar esas aguas en su estado natural, libre de desperdicios y de materias que puedan contaminarlas y hacerlas inservibles para los usos indicados y perjudiciales a la salud de personas y animales. El predio inferior del demandante está sujeto a recibir las aguas que naturalmente y sin obra de hombre fluyen del predio superior de la demandada. Cuando las aguas, como en este caso, proceden de un establecimiento industrial, que no ha adquirido una servidumbre para arrojarlas sobre el predio inferior, el dueño de éste tiene derecho a exigir resarcimiento de daños y perjuicios, pudiendo además ''oponerse a recibir los sobrantes de establecimientos industriales que arrastren o lleven

en disolución sustancias nocivas introducidas por los dueños de éstos.'' Artículo 69, Ley de Aguas.]

■ El injunction, según lo define el artículo 675 del Código de Enjuiciamiento Civil, edición de 1933, es un mandamiento judicial por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su dirección, determinada cosa que infrinja o perjudique el derecho de otra. Entre los casos en que de acuerdo con el artículo 677 del mismo Código puede concederse un injunction figuran: (a) cuando resulta de la petición que el demandante tiene derecho al remedio solicitado y éste consiste en impedir la comisión o continuación del acto denunciado; (b) cuando de la petición resultare que la continuación del acto durante el litigio habrá de causar pérdidas o daños de consideración o irreparables; (c) cuando una compensación pecuniaria no habría de proporcionar adecuado remedio; y (d) para impedir una multiplicidad de procedimientos judiciales.

Los hechos alegados en la demanda son suficientes para dar derecho al demandante al remedio de injunction. Véase artículo 277 del Código de Enjuiciamiento Civil, edición de 1933. La prueba presentada a la corte inferior lo estableció satisfactoriamente, sin que la demandada ofreciese prueba alguna en contrario.([1]) La contaminación de las aguas que un agricultor necesita usar en su estado natural, para dar de beber a seres humanos y a su ganado, sin duda alguna ha de causarle daños de consideración y muy difícil de reparar. [La denegación del injunction en un caso como el de autos obligaría al demandante a radicar una demanda de daños y perjuicios cada vez que uno de sus animales muera como consecuencia de haber tomado aguas contaminadas por la demandada,]dando con ello lugar a la multiplicidad de pleitos que la ley de injunction trata de evitar]

---

([1])*Las Monjas Racing Corp.* v. *Comisión Hípica,* 57 D.P.R. 96; High *on Injunctions,* 3ra. ed., sec. 5, pág. 6.

La demandada ni siquiera ha alegado que el balance de la conveniencia esté a su favor, ni tampoco que le sea material o económicamente imposible verter las aguas por ella contaminadas, en otro sitio que no sea el que ha venido utilizando sin derecho alguno para ello y en violación del derecho del demandante. Además, la doctrina generalmente aceptada es la de que la contaminación de una corriente de agua, con perjuicio del dueño del predio inferior no puede justificarse por la mera importancia del negocio del dueño del predio .superior. *Straight* v. *Hover,* 79 Ohio St. 263, 22 L.R.A. (N. S.) 276 y nota. Es numerosa la jurisprudencia que sostiene que la necesidad no constituye una defensa para justificar la contaminación irrazonable de las aguas. *Attorney General ex Rel. Emmons* v. *City of Grand Rapids,* 141 N. W. 890, 50 L.R.A. (N. S.) 473, y casos allí citados.

No erró la corte inferior al decretar el injunction preliminar. *La resolución recurrida será confirmada.*